E-FILED
Wednesday, 08 May, 2019  03:34:11 PM
Clerk, U.S. District Court, ILCD

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| **ROBERT SHINALL and TERESA JACKSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.:  19-cv-03123** |
| **v.** | ) | |
| | ) | |
| **PEKIN MEMORIAL HOSPITAL, d/b/a** | ) | |
| **UNITYPOINT HEALTH-PEKIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

Plaintiffs, Robert Shinall and Teresa Jackson, by their attorneys, Jennifer M. Sender and Andrés J. Gallegos of Robbins, Salomon & Patt, Ltd., for their Complaint against Defendant Pekin Memorial Hospital, d/b/a UnityPoint Health - Pekin ("UnityPoint," or the "Defendant"), an Illinois not-for-profit corporation, state as follows:

### JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

3.      Plaintiff, Robert Shinall ("Robert"), is an adult and has been profoundly deaf since birth. Robert's primary and predominant means of communication is through American Sign Language ("ASL"). Robert has a limited ability to understand written English language, he can read and write English at the fourth-grade level, and he does not lip read. He is a person with a disability within the meaning of all applicable statutes. Robert resides in Pekin, Illinois, with his girlfriend, Teresa Jackson.

4.      Plaintiff, Teresa Jackson ("Teresa"), is an adult and is Robert's girlfriend. Teresa has been profoundly deaf since birth. Teresa's primary and predominant means of communication is through ASL. She has a limited ability to understand written English language, she can read and write English at the fourth-grade level, and she does not lip read. She is a person with a disability within the meaning of all applicable statutes. Teresa resides with Robert Shinall in Pekin, Illinois.

5.      UnityPoint Health - Pekin is an Illinois not-for-profit corporation and is a regional acute care medical center located in Pekin, Illinois, which serves the residents of central and western Illinois area. UnityPoint Health - Pekin is one of 29 hospitals of the UnityPoint Health System. UnityPoint Health – Pekin hospital is the only hospital in Pekin. It is approximately 2 miles from Robert's home.

## FACTUAL BACKGROUND

6.      The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages.

3083791 (14162.1)

Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits.

7.      UnityPoint's denial to plaintiffs of full and equal access to its healthcare services manifests itself in several fundamental ways: (1) failure to provide appropriate auxiliary aids and services, like qualified ASL interpreters and devices, or other means to effectively communicate with patients and companions of patients who are deaf; (2) inadequate policies and procedures to accommodate the plaintiffs' disability; and (3) failure to properly train appropriate staff on the use of video remote interpreting ("VRI") equipment. These violations deprived the plaintiffs of the full and equal access to defendant's services and denied plaintiffs the equal opportunity to participate in Robert's healthcare, in violation of the ADA, the Rehabilitation Act and Section 1557.

8.      UnityPoint failed to implement policies, practices and procedures that meet its enhanced federal communication access mandate, which if followed would provide plaintiffs an equal opportunity to participate in its services and in healthcare services provided to Robert, as required by Section 1557. 45 C.F.R. § 92.202.

9.      UnityPoint is a public accommodation within the meaning of the ADA, and a covered entity within the meaning of Section 1557.

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at:
http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

3083791 (14162.1)

10.     UnityPoint participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. Approximately 80% of UnityPoint's inpatients are Medicaid and Medicare recipients; and approximately 65% of its outpatients are Medicaid and Medicare recipients. As a result thereof, UnityPoint is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and a covered entity under Section 1557.[2]

11.     UnityPoint failed to provide Robert with auxiliary aids and services to allow him to effectively communicate with UnityPoint's medical and nursing staff during numerous vital encounters in connection with Robert's five visits to the emergency department and his two hospitalizations there in October and November of 2017, which did not allow him to participate in his own care. Further, UnityPoint failed to also provide Teresa with auxiliary aids and services to allow her to effectively communicate with UnityPoint's doctors, nurses and staff when she visited Robert in the hospital during numerous vital encounters in connection with medical services that Robert received at UnityPoint. As UnityPoint noted in Robert's medical records, Teresa is fairly involved Robert's care. By failing to provide auxiliary aids and services to permit Robert and Teresa to achieve effective communication during numerous vital encounters with its doctors and nurses, UnityPoint jeopardized Robert's health and well-being.

12.     On October 27, 2017, Robert presented to Defendant's emergency department for pain to his ribs and difficulty breathing. Upon arrival, he asked for an ASL interpreter. The nurses provided him with paper and pen to communicate. Robert's dominant hand was restrained to the hospital bed, so he was forced to write with his non-dominant hand. He was experiencing

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101214 (60.45% of all inpatients at UnityPoint Health - Pekin are Medicare recipients, and 17.64% of its inpatients are Medicaid recipients; 37.69% of all of its outpatients are Medicare recipients, and 27.38% of its outpatients are Medicaid recipients).

3083791 (14162.1)

significant pain in his ribs and shortness of breath which he struggled greatly to convey to the Defendant's doctors and nurses, but could not. He was discharged that night.

13.     On October 28, 2017, Robert again presented to Defendant's emergency department due to chest pains, difficulty breathing, and rib pain. He again requested an ASL interpreter, but the Defendant's staff only provided pen and paper. His medical records for this visit note his deafness, that he was "fairly difficult to communicate with" and that his medical history was obtained from his electronic record, which was sparse. After x-rays disclosed that Robert had a collapsed lung and rib fractures, Robert was admitted. He underwent surgery to place a chest tube. He remained in Defendant's hospital until November 1, 2017. Despite Robert's numerous requests for an ASL interpreter, Defendant did not provide an interpreter at all during his five-day admission. Instead, Defendant forced Robert to use written notes to attempt to communicate with doctors, nurses, and staff for all communications, including discussions of Robert's medical history and complaints, recommendation for surgery, consent for surgery, post-surgical complaints, diagnosis, prognosis, and discharge instructions. This communication was not effective for Robert.

14.     While Robert was in Defendant's hospital, Teresa visited frequently. Despite Teresa's repeated requests for an ASL interpreter for both Robert and herself, Defendant did not provide an ASL interpreter for either. She too had difficulty communicating with Defendant's doctors and nurses when they came into Robert's room and she was trying to understand Robert's condition so she could explain it to him.

15.     On November 11, 2017, Robert returned to Defendant's emergency department due to difficulty breathing and severe pain. He again requested an ASL interpreter, but

5

Defendant only provided him with pen and paper to communicate. He was admitted to the hospital for exploratory surgery and replacement of the chest tube. Upon admission, a nurse took his cell phone, so he had no way to contact Teresa for assistance. Further, after surgery, both of Robert's wrists were strapped and restrained to the sides of the bed, and he had no way to communicate with the staff. Hours later, Robert was able to pull free of the arm restraints and use the pen and paper to request an ASL interpreter. Defendant still did not provide an interpreter. When Robert's phone was returned to him, he was able to contact Teresa who came to the hospital. During her visit on November 11, 2017, she requested an ASL interpreter from Defendant's social worker, but the request was denied.

16.     During Robert's hospitalization from November 11, 2017 through November 16, 2017, Defendant ignored his and Teresa's repeated requests for an ASL interpreter. At one point, Defendant attempted to use video remote interpreting ("VRI") equipment, but the transmission froze and the picture frequently pixelated. As such, the attempted use of VRI was not effective for Robert. Accordingly, Defendant forced Robert to use written notes to attempt to communicate with doctors, nurses, and staff for all communications, including discussions of Robert's medical history and complaints, recommendation for surgery, consent for surgery, post-surgical complaints, diagnosis, prognosis, and discharge instructions. This communication was not effective for Robert.

17.     On November 20, 2017, based on referral from his primary care provider, Robert again presented to Defendant's emergency department for complaints of chest discomfort. Upon arrival, he requested an ASL interpreter, but yet again, Defendant only provided pen and paper. He was examined for a couple of hours and then discharged home. He did not understand what the examination revealed or what was causing his pain.

6

18.     On November 29, 2017, Robert once again went to Defendant's emergency room with chest wall pain and back pain. Upon arrival, he requested an ASL interpreter, but none was provided.   In his medical records, the physician recorded, "Patient is deaf; therefore communication was obtained through writing on paper." The exchange of written notes was not effective for Robert. He was examined and discharged home after a few hours.

19.     Robert's medical insurance is through Molina Healthcare. UnityPoint, which is approximately 2 miles from his residence, is an in-network hospital provider under Molina Healthcare's plan.  As it is the closest hospital to his residence and in-network under his health insurance plan, Robert intends to continue to utilize UnityPoint.

## COUNT I

### Robert Shinall - Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-19.    Plaintiff incorporates by reference paragraphs 1 through 19.

20.     Robert's claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulations under Title III, applicable to public accommodations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

    A.    No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

    B.    It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

C.     It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

D.     It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

E.     The term "public accommodation," as used in the statute, includes hospitals. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

21.     Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

22.     The acts and omissions of defendant UnityPoint violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners, as UnityPoint has discriminated against Robert by:

8

A.      Denying him the opportunity for the full and equal enjoyment of UnityPoint's goods, services, facilities, privileges, advantages, or accommodations.

B.      Denying him the opportunity to participate in or benefit from UnityPoint's goods, services, facilities, privileges, advantages, or accommodations.

C.      Offering or affording him services that are not equal to those services afforded to other individuals who are not deaf.

D.      Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford UnityPoint's goods, services and facilities to Robert where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.      Intentionally failing to provide plaintiff appropriate auxiliary aids and services to achieve effective communications and to participate in his own healthcare.

F.      Otherwise having discriminated against the plaintiff because of his disability.

23.     As a proximate result of Defendant's violations of the ADA, UnityPoint has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

24.     UnityPoint's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, defendant UnityPoint will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Robert, for which he has no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Robert is entitled to injunctive relief.

25.     Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, plaintiff Robert Shinall prays for the following relief against defendant UnityPoint:

A.      A preliminary injunction and a permanent injunction, prohibiting Defendant UnityPoint from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA;

9

B.      A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.      An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

D.      An award of attorneys' fees and costs; and

E.      Such other relief as the Court deems just.


## COUNT II

### Robert Shinall - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-19.   Plaintiff incorporates by reference the paragraphs 1 through 19.

20.     At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

21.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

A.  The regulation further provides:

"A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

10

45 C.F.R. § 84.4(b)(1) (ii).

B.  Elsewhere, the Section 504 regulation states:

"In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

45  C.F.R. § 84.52(a)(2).

C.  In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R.  § 84.52(c).

D.  The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

3083791 (14162.1)

22.     Through the acts and omissions alleged herein, UnityPoint has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in his healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

23.     At all relevant times herein, UnityPoint knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Robert by:

A.      Denying him the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

B.      Denying him the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

C.      Offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

D.      Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

E.      Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care in its emergency room and in his patient rooms.

F.      Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

G.      Defendant has otherwise discriminated against the Plaintiff.

24.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

25.     As a proximate result of Defendant's violations of Section 504, UnityPoint has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

26.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Shinall prays for the following relief:

A.     An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.     An award of compensatory monetary damages;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just.

13

## COUNT III

## Robert Shinall - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-19.    Plaintiff incorporates by reference paragraphs 1 through 19.

20.    Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

21.    As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

22.    The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.    Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1)    that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)    that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner,

14

> when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

> (3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

> (4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

> (5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

> (6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

> B.    That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

23.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide him with an ASL interpreter, either on-site or via effective VRI.

24.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

25.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

26.     Defendant's conduct constituted violations of Section 1557.

27.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

28.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Shinall prays for the following relief:

A.  An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.  A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.  An award of compensatory monetary damages;

D.  An award of attorneys' fees and costs; and

E.  Such other relief as the Court deems just.

## COUNT IV

### Teresa Jackson - Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-19.   Plaintiff incorporates by reference paragraphs 1 through 19.

20.   Teresa's claims in Count IV arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulations under Title III, applicable to public accommodations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

A.  No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

B.  It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or

accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

C.  It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

D.  It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

E.  The term "public accommodation," as used in the statute, includes hospitals. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

21.    Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). That obligation extends to companions who are deaf. *Id.* Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

18

22.     Despite recognizing Teresa as fairly involved in Robert's care, and hence an appropriate person to communicate with regarding that care, Defendant denied her repeated requests of an interpreter, and left her fending for herself to attempt to understand what was occurring, what was Robert's condition, what were the treatment options, plan of care, etc.

23.     The acts and omissions of Defendant violated and continues to violate the ADA and its implementing regulations in one or more or all of the following manners, as Defendant has discriminated against Teresa by:

A.     Denying her the opportunity for the full and equal enjoyment of UnityPoint's goods, services, facilities, privileges, advantages, or accommodations.

B.     Denying her the opportunity to participate in or benefit from UnityPoint's goods, services, facilities, privileges, advantages, or accommodations.

C.     Offering or affording her services that are not equal to those services afforded to other individuals who are not deaf.

D.     Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford UnityPoint's goods, services and facilities to Teresa where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.     Intentionally failing to provide Teresa appropriate auxiliary aids and services to achieve effective communications and to participate in Robert's healthcare.

F.     Otherwise having discriminated against the plaintiff because of her disability.

24.     As a proximate result of Defendant's violations of the ADA, UnityPoint has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

25.     UnityPoint's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, UnityPoint will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Teresa, for which she has no adequate remedy

at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Teresa is entitled to injunctive relief.

26.    Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, plaintiff Teresa Jackson prays for the following relief against defendant UnityPoint Health:

A.    A preliminary injunction and a permanent injunction, prohibiting UnityPoint from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA;

B.    An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

C.    An award of attorneys' fees and costs; and

D.    Such other relief as the Court deems just.

## COUNT V

## Teresa Jackson - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-19.    Plaintiff incorporates by reference the paragraphs 1 through 19.

20.    At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

21.    At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied

20

the benefits of or otherwise be subjected to discrimination under any program or activity which

receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

A. The regulation further provides:

"A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

45 C.F.R. § 84.4(b)(1) (ii).

B. Elsewhere, the Section 504 regulation states:

"In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: ... (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

46 C.F.R. § 84.52(a)(2).

C. In addition, "[a] recipient hospital that provides health services or benefits

shall establish a procedure for effective communication with persons with impaired hearing for

the purpose of providing emergency health care." 45 C.F.R. § 84.52(c).

D. The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E. The regulation provides that such "auxiliary aids may include interpreters…

and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F. The Section 504 regulation defines a person who has a disability as any person

who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

22.   Through the acts and omissions alleged herein, UnityPoint has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in Robert's healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

23.   At all relevant times herein, UnityPoint knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Teresa by:

A.   Denying her the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

B.   Denying her the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

C.   Offering or affording her services that are not equal to those services afforded to other individuals who are not deaf.

D.   Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

E.      Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

F.      Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

G.      Defendant has otherwise discriminated against the Plaintiff.

24.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

25.     As a proximate result of Defendant's violations of Section 504, UnityPoint has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

26.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Teresa Jackson prays for the following relief:

A.      An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

23

B.      A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.      An award of compensatory monetary damages;

D.      An award of attorneys' fees and costs; and

E.      Such other relief as the Court deems just.

## COUNT VI

### Teresa Jackson - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-19.    Plaintiff incorporates by reference paragraphs 1 through 19.

20.      Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

21.      As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

22.      The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.   Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

   (1)   that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

   (2)   that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

   (3)   how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

   (4)   the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

   (5)   the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

   (6)   how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.   That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal

opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added). Those regulations also proscribe a covered entity from requiring an individual with a disability to bring another individual to interpret for him or her, 28 C.F.R. §35.160(c)(1); from relying on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult to provide such assistance is appropriate under the circumstances, 28 C.F.R. § 35.160 (2)(i)&(ii); and from relying on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 C.F.R. § 35.160(c)(3).

23.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

24.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide her with an ASL interpreter, either on-site or via effective VRI.

25.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with

Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

26.  Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

27.  Defendant's conduct constituted violations of Section 1557.

28.  Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

29.  Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Teresa Jackson prays for the following relief:

A.  An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.      A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.      An award of compensatory monetary damages;

D.      An award of attorneys' fees and costs; and

E.      Such other relief as the Court deems just.


**Plaintiffs Demand Trial by Jury.**


Dated: May 8, 2019                              Robert Shinall and Teresa Jackson, Plaintiffs.

                                                 /s/ Jennifer M. Sender
                                                _____
                                                One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com

3083791 (14162.1)